Submitted on the record April 14, modified ballot title referred to Attorney General for modification June 5, 2003
Modified ballot title certified June 24, 2003 (335 Or 506, 73 P3d 291)

Tim NESBITT,
Tricia Bosak, and Kris Kain,
*Petitioners,*

*v.*

Hardy MYERS,
Attorney General,
State of Oregon,
*Respondent.*

(SC S50078)

71 P3d 530

Lynn-Marie Crider, Salem, filed the petition objecting to modified ballot title for petitioner Nesbitt.

Margaret S. Olney, of Smith, Gamson, Diamond & Olney, Portland, filed the petition objecting to modified ballot title for petitioners Bosak and Kain.

Brendan C. Dunn, Assistant Attorney General, Salem, filed the response to objections for respondent. With him on

the response were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Carson, Chief Justice, and Gillette, Durham, Riggs, De Muniz, and Balmer, Justices.

GILLETTE, J.

## GILLETTE, J.

This ballot title review proceeding is before us again following our previous referral for modification of the Attorney General's certified ballot title for Initiative Petition 22 (2004). *Nesbitt v. Myers*, 335 Or 219, 224-27, 64 P3d 1133 (2003). The Attorney General has prepared and filed a modified ballot title, which petitioners now challenge. *See* ORS 250.085(9) (prescribing procedure for modifying ballot title after referral).[1] We find certain of petitioners' objections to be well taken and, therefore, refer the modified ballot title to the Attorney General.

■   In our earlier opinion, we described the proposed measure as follows:

> "The proposed measure, if adopted, would amend the Oregon Constitution by adding a section forbidding use 'for a political purpose,' as the proposed measure defines that phrase, of money deducted from an employee's paycheck, unless the employee consents to such use annually and in writing. The proposed measure contains definitions of certain of its terms, prescribes certain administrative requirements that must be followed by those who receive money from payroll deductions if the proposed measure is adopted, and prescribes the various consequences that are to follow if any of its substantive provisions is violated."

*Nesbitt*, 335 Or at 221. For convenience, we set out the Attorney General's modified ballot title for the proposed measure:

> "AMENDS CONSTITUTION:   ENTITIES RECEIVING PAYROLL DEDUCTIONS CANNOT USE THEM FOR 'POLITICAL PURPOSES' (DEFINED) WITHOUT EMPLOYEE'S WRITTEN AUTHORIZATION
>
> "RESULT OF 'YES' VOTE:   'Yes' vote requires entities receiving payroll deductions to obtain employee's written, annual authorization and comply with additional limitations before using deductions for 'political purposes' (defined).

---

[1] ORS 250.085(9) limits further challenges, once the Attorney General has filed a modified ballot title, to "any of the parties to the ballot title review proceeding [who] timely files a petition objecting to the modified ballot title." Petitioners here meet the foregoing qualifications.

"RESULT OF 'NO' VOTE: 'No' vote rejects requirement that entities receiving payroll deductions obtain employee's authorization and comply with additional limitations before using payroll deductions for 'political purposes' (defined).

"SUMMARY: Amends Constitution. Measure prohibits entities receiving payroll deductions from using those deductions for 'political purposes' (defined below) without employee's permission annually granted on form used for this purpose; legislature must ensure personal information is neither on form nor publicly available. Measure defines deductions used for 'political purposes' as deductions for which any portion is: contributed to candidate, political committee, party; or spent supporting/opposing ballot measure or public-office candidate. Deductions are not used for 'political purposes' when spent lobbying, unless spent on communications identifying public-office candidate within 60 days of election. Entities receiving payroll deductions to be used for 'political purposes' (defined above) must place them in segregated accounts and cannot commingle political funds with other funds. Establishes penalties for violations. Other provisions."

Our review of a modified ballot title has the same scope as our review of a certified ballot title, *i.e.*, we review to "determine whether the modified ballot title substantially complies with the requirements of ORS 250.035." ORS 250.085(9). Petitioners assert that the Attorney General's modified ballot title in this case fails that test with respect to each of the ballot title's four sections—the caption, "yes" vote result statement, "no" vote result statement, and summary. We address petitioners' contentions in that order.

## THE CAPTION

As noted, the Attorney General's modified ballot title caption states:

"AMENDS CONSTITUTION: ENTITIES RECEIVING
PAYROLL DEDUCTIONS CANNOT USE THEM
FOR 'POLITICAL PURPOSES' (DEFINED) WITHOUT
EMPLOYEE'S WRITTEN AUTHORIZATION"

Petitioner Nesbitt notes that this court in its earlier opinion concerning the certified ballot title stated that "the proposed

measure focuses wholly on what organizations that receive money through payroll deductions may do with that money," *Nesbitt*, 335 Or at 224, and that the "proposed measure would enact a complete regime of limitations on the use for 'political purposes' of any funds obtained by any organization, public or private, through payroll deduction." *Id.* at 225. It follows from those statements, petitioner Nesbitt argues, that "the ballot title must clearly describe this new regime and must tell the voters that current law imposes no such restrictions on the use of money—whether [the money] is received via payroll deduction or by any other means."

Based on the foregoing, petitioner Nesbitt argues that the Attorney General's caption fails to "reasonably iden- tif[y] the subject matter of the state measure," as ORS 250.035(2)(a) requires. He asserts that the flaw in the modi- fied caption is that it describes the various unions, busi- nesses, charities, and others who presently receive money through voluntary payroll deductions by the phrase "entities receiving payroll deductions." Petitioner Nesbitt argues that the Attorney General instead should use what he asserts is an accurate descriptive phrase, *viz.*, "organizations receiving money by payroll deduction." The Attorney General's choice of phrase, he maintains, is impermissibly obscure.

■ We disagree with petitioner Nesbitt's premise that, even when the phrase is read in context, the average voter will read "entities receiving payroll deductions" to mean something different than "organizations receiving money by payroll deduction." In our view, the former phrase is a per- missible variant of the latter. Certainly, we cannot say that the choice of one permissible choice of phrase over another permissible choice means that the Attorney General's modified caption fails to comply substantially with ORS 250.035(2)(a). Accordingly, we decline to require the Attorney General further to modify the wording of his modified caption.[2]

---

[2] We have considered the separate argument of petitioners Kain and Bosak respecting the Attorney General's modified caption. It is not well taken.

## THE "YES" VOTE RESULT STATEMENT

As noted, the Attorney General's modified "yes" vote result statement provides:

"RESULT OF 'YES' VOTE: 'Yes' vote requires entities receiving payroll deductions to obtain employee's written, annual authorization and comply with additional limitations before using deductions for 'political purposes' (defined)."

Petitioner Nesbitt asserts that the Attorney General's "yes" vote result statement "is misleading, if not actually inaccurate." The difficulty, he asserts, arises out of the fact that, as now written, the modified "yes" vote results statement

"would lead one to assume that the conditions [that the proposed measure would place on spending money for political purposes] may be met as a matter of course—that the issue is when political spending can occur rather than whether it can occur. In addition, the language [of the modified 'yes' vote result statement] does not state that an organization that receives payroll-deducted money cannot spend for political purposes unless it obtains a specific written authorization *of political spending*."

(Emphasis in original.) He then proposes wording that he asserts would meet his objections.

■ Our problem with that argument is that we do not read the Attorney General's modified "yes" vote result statement the same way that petitioner Nesbitt does. Respecting his first concern, we perceive no intimation in the statement that suggests that meeting the conditions the proposed measure would set would be simple or routine. Respecting his second concern, we read the statement to say specifically what he wants it to say, *viz.*, that the employee's written, annual authorization must be for the use of a payroll deduction for political purposes. Perhaps that proposition could be made even more explicit by adjusting the wording in the statement to more directly connect "written, annual authorization" with "deductions for political purposes." But the Attorney General's failure to do so does not mean that the modified "yes" vote result statement fails to comply substantially with the requirements of ORS 250.035(2)(b). We decline to require the

Attorney General further to modify the wording of his modified "yes" vote result statement.[3]

## THE "NO" VOTE RESULT STATEMENT

As noted, the Attorney General's modified "no" vote result statement provides:

> "RESULT OF 'NO' VOTE: ' 'No' vote rejects requirement that entities receiving payroll deductions obtain employee's authorization and comply with additional limitations before using payroll deductions for 'political purposes' (defined)."

■ All petitioners assert that, as petitioner Nesbitt puts it, the Attorney General's "no" vote result statement "simply tells the voters that a 'no' vote will reject what has already been described [as] the result of the 'yes' vote." That, petitioner argues, means that the "no" vote result statement provides no further information to the voter, thereby rendering the statement essentially pointless. In so arguing, petitioners rely on *Kain v. Myers*, 335 Or 228, 64 P3d 1129 (2003), a case also involving a proposed initiative measure relating to permissible use of money obtained by payroll deductions. In that case, as here, the Attorney General's "no" vote result statement essentially mirrored his "yes" vote result statement, introduced by the word "reject." This court observed:

> "Petitioners further argue that the Attorney General's 'no' vote result statement is not 'simple and understandable,' as the statute demands * * *. We agree with petitioners that the statement is not understandable, because it provides no new information to the reader. Instead, it simply attaches the word 'rejects' to the same summary of the proposed measure that appeared in the 'yes' vote result statement. That is, the substantive message of the Attorney General's 'no' vote result statement is that ' "no" rejects "yes".' That is not a sufficient explanation to meet the requirement of ORS 250.035(2)(c)."[4]

---

[3] We have considered the separate argument of petitioners Kain and Bosak respecting the Attorney General's modified "yes" vote result statement. It is not well taken.

[4] We also were critical of a similarly constructed "no" vote result statement in our earlier opinion respecting the ballot title for this proposed measure. *Nesbitt*, 335 Or at 226. However, we did not refer the "no" vote result statement to the Attorney General on that ground, because there was another basis for declaring

*Id.* at 234-35.

The Attorney General makes three discrete responses to petitioners' argument. He argues, first, that what this court actually ruled with respect to the original "no" vote result statement was that "the proposed measure would not affect current law and, as a result, the 'no' vote result statement should not describe current law."

That is not what we stated. The Attorney General's original "no" vote result statement provided, in part, that a " '[n]o' vote retains, without modification, current provisions governing payroll deductions." What we stated about that part of the original "no" vote result statement was that the reference to "current provisions" was misleading, because some provisions (we cited several) would not be modified, whether or not the proposed measure is adopted. *Nesbitt*, 335 Or at 225-26. That was a limited holding. It did not address the permissibility or the possibility of saying something else about the state of existing law that properly would contrast with the result of a "yes" vote on the proposed measure. In short, our previous holding in this case is no barrier to a discussion of what the present state of the law is with respect to who may receive payroll deductions or to what purposes those deductions, once received, may be put.

The Attorney General next argues that,

"even if this court * * * intended that the modified 'no' vote result statement say something about the current law a 'no' vote would 'retain,' the Attorney General has been unable to discern an accurate way to describe retained current law within the [statutory] 25-word limit [set by ORS 250.035(2)(c)]."

We do not wish to be understood as in any way denigrating the time-pressured nature of the Attorney General's task in writing (or, in this case, rewriting) ballot titles. Still, we find the Attorney General's assertion that he cannot discern any way to make a valid reference to existing law in the space allowed surprising. It surely is possible, for example, to refer

---

that the statement as written did not conform to the requirement of ORS 250.035(2)(c). *See Nesbitt*, 335 Or at 225-26 (form of reference in "no" vote result statement to existing statutory law failed to comply with ORS 250.035(2)(c)).

to the fact that no current law limits the uses to which properly deducted funds may be put or to the fact that no current law requires that such funds that are earmarked for "political purposes" be segregated by the entities that use them.

■      We do not assert that there never will be a time when it is permissible, under ORS 250.035(2)(c), for the Attorney General to certify a "no" vote result statement that simply inserts a "rejects" in front of the words of the "yes" vote result statement. Each case will have to be judged on its own merits. But, as this court explained in *Kain*, a statement that says no more than that " 'no' rejects 'yes' " does not much advance any voter's understanding of the choice that a proposed measure represents. Certainly, before resorting to the " 'no' rejects 'yes' " statement as a default position, the Attorney General needs to be reasonably satisfied that he cannot compose other possible formulations of the "no" vote result statement that will provide the voter with a greater amount of information. In this case, he has not persuaded us that that is true.

Finally, the Attorney General argues that

> "a 'rejects' formulation is entirely consistent with the pertinent statutory requirements. A 'no' vote would, in fact, have the result of rejecting the new limitations that the proposed measure would impose. Therefore, it is accurate to say that a 'no' vote has the result of 'rejecting' the proposed measure's new provisions. Indeed, ORS 250.035(3) expressly provides that a 'yes' vote result statement and a 'no' vote result statement 'shall be written so that, to the extent practicable, the language of the two statements is parallel.' That language implicitly authorizes a 'rejects' formulation that parallels a 'yes' vote result statement, even if that means the 'no' vote result statement provides little or no new information."

In other words, this court now should withdraw its holding in *Kain*.

We decline the invitation. The function of the "no" vote result statement is to provide a voter with a "simple and understandable statement of not more than 25 words *that describes the result if the state measure is rejected*." ORS 250.035(2)(c) (emphasis added). That emphasized wording,

examined in light of the contrasting information that ORS 250.035(2)(b) requires in a "yes" vote result statement, in our view, states an expectation that, when possible, the "no" vote result statement will provide information that should assist the voter to understand the state of affairs that will exist if the voters reject the proposed measure. It is no news to a voter that voting "no" means "not yes." Thus, although simple parallelism may fulfill the emphasized statutory goal in the abstract, it will do so only mindlessly in many cases.

We hold that the present case is not one in which the Attorney General has shown that a "no" vote result statement paralleling the "yes" vote result statement meets the requirement of ORS 250.035(2)(c) that the "no" vote result statement be a simple and understandable statement "describ[ing] the result if the state measure is rejected." Accordingly, the matter once again must be referred to the Attorney General. ORS 250.085(10)(b).

## THE SUMMARY

As noted, the Attorney General's modified summary states:

> "SUMMARY: Amends Constitution. Measure prohibits entities receiving payroll deductions from using those deductions for 'political purposes' (defined below) without employee's permission annually granted on form used for this purpose; legislature must ensure personal information is neither on form nor publicly available. Measure defines deductions used for 'political purposes' as deductions for which any portion is: contributed to candidate, political committee, party; or spent supporting/opposing ballot measure or public-office candidate. Deductions are not used for 'political purposes' when spent lobbying, unless spent on communications identifying public-office candidate within 60 days of election. Entities receiving payroll deductions to be used for "political purposes" (defined above) must place them in segregated accounts and cannot commingle political funds with other funds. Establishes penalties for violations. Other provisions."

In our earlier opinion, we stated the following respecting the Attorney General's original summary:

"[P]etitioners challenge the Attorney General's use of a part of the summary to refer to provisions of law that would not be affected if the proposed measure were to pass. We agree with petitioners that devoting too extensive a part of the summary to that topic does not further the summarization either of the measure or its major effect. We conclude, therefore, that its inclusion is inappropriate * * *."

*Nesbitt*, 335 Or at 226-27. As can be seen, the Attorney General's response to that criticism was to omit from the summary any discussion at all of present law. Petitioners now complain that that is an overreaction that denies to voters the necessary context within which to understand the scope and effect of the changes that would come about if the proposed measure were adopted. The Attorney General essentially defends his choice by asserting that it follows from this court's critique of his original summary.

We disagree with the Attorney General to the extent that he appears to be arguing that this court's earlier opinion required (or even authorized) him to omit any discussion of current law, even where that discussion provided relevant context for the voter's choice. Indeed, that is precisely the reason that this court stated only that "too extensive" a part of the original summary was devoted to current law "that would not be affected if the proposed measure were to pass." *Id.* at 226.

Petitioners specifically complain that the original summary's inclusion of a description of current legal limitations on the uses to which unions may put payroll deductions was relevant (and even necessary) context that should be included in the new summary. We do not believe that we should address that argument now. The Attorney General's defense of his choice to omit any discussion of current law was based on his understanding from this court's earlier opinion that such a categorical omission was appropriate. We now have explained that his understanding was not correct. With that clarification, we assume that the Attorney General will make permissible choices respecting which current law to discuss, based on his estimation of the relative value of including that information and omitting other information that his present summary contains.

In summary, we hold that the Attorney General's modified ballot title fails to comply with the requirements of ORS 250.035. The modified ballot title must be referred to the Attorney General. ORS 250.085(10)(b).

Modified ballot title referred to Attorney General for modification.